[Cite as *State v. Curry*, 2022-Ohio-627.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210274 |
| | | TRIAL NO. B-2005513 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| ANDRE CURRY, | : | |
| | | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: March 4, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Bryan R. Perkins*, for Defendant-Appellee.

**WINKLER, Judge.**

{¶1} Andre Curry was indicted on one count of having weapons while under a disability after the police located a firearm in the trunk of his vehicle during a traffic stop. Curry moved to suppress the firearm obtained during the warrantless search of the trunk, and the trial court granted that motion after a suppression hearing. The state of Ohio now appeals, claiming in one assignment of error that the trial court erred in granting the motion to suppress.

{¶2} The state maintains the search of the trunk was justified under the automobile exception to the warrant requirement. The investigating officer testified to several key facts that demonstrate probable cause, including detecting the odor of raw marijuana emanating from the trunk before the search, and the trial court expressly found the officer credible. Curry characterizes the credibility finding as "obscure" and unsupported by the record. We accept the credibility finding by the trial court and conclude the trial court misapplied the law governing the automobile exception because the facts demonstrate the officer had probable cause to search the trunk. Consequently, we reverse.

## I. Background Facts and Procedure

{¶3} Curry moved to suppress the firearm on the ground that the search of his trunk was performed without a warrant. At the suppression hearing, Cincinnati Police Officer Aubrey Pitts acknowledged the absence of a warrant, but indicated he believed based on certain facts he observed and his training that the trunk contained raw marijuana and therefore an immediate search was justified.

{¶4} Officer Pitts testified that he was patrolling the area of Gilbert Avenue and Beecher Street as a member of the police department's gun task force in the early

evening of October 19, 2020. On that date, he had been a police officer for over five years, patrolling on shifts for most of his tenure. He specified his training from which he learned to distinguish the odor of burnt marijuana from raw marijuana and to detect marijuana in vehicles.

{¶5} According to Officer Pitts, he stopped the 2019 Honda Civic driven by Curry due to illegal "heavy window tint" that prevented him from seeing the occupants inside the vehicle. Officer Pitts approached the "slow-to-stop" vehicle and ordered Curry and the occupants out of the vehicle due to furtive movements observed by another officer at the scene. The occupants were handcuffed and placed in the back of his cruiser. The officer testified that at the same time he smelled the odor of raw marijuana emanating from the passenger compartment along with the scent of burnt marijuana. Additionally, the officer stated he detected the odor of raw marijuana emanating from the unopened trunk of Curry's vehicle.

{¶6} Inside the passenger compartment, Officer Pitts found a small amount of raw marijuana, more on the passenger's side than on the driver's side. He then searched the trunk of the vehicle. There, he found no marijuana, but located the firearm that led to Curry's indictment for having weapons while under a disability.

{¶7} Curry testified at the suppression hearing, and that testimony provided a perspective that differed from the officer's perceptions. Curry said he could not smell any marijuana that day in the passenger compartment or emanating from the trunk, the quantity of drugs was too insignificant to be detected, based on his experience with the substance, and no raw marijuana had ever been placed in the trunk of his vehicle.

3

{¶8} During closing arguments at the hearing, defense counsel argued the exclusionary rule required suppression of the firearm. Characterizing as incredible the officer's testimony about smelling marijuana from a closed trunk that contained no marijuana, defense counsel asserted the state failed to present any credible facts to justify the warrantless search of the trunk based on the automobile exception. Although the state relied solely on the automobile exception to justify the warrantless search, defense counsel refuted the application of the other exceptions to the warrant requirement, concluding that police could not search the trunk, an area where Curry could not "reach."

{¶9} To refute defense counsel's impossibility argument, the assistant prosecutor directed the trial court to a decision from this court recognizing probable cause based on police officers' credible testimony that they perceived the odor of raw marijuana emanating from a trunk. *See State v. Howard*, 1st Dist. Hamilton Nos. C-070174 and C-070175, 2008-Ohio-2706, ¶ 11.

{¶10} After entertaining argument on Curry's motion, the trial court took the matter under advisement for a few weeks and then granted the motion to suppress. In its oral comments explaining the basis of its decision, the court made the following findings:

> The defendant was stopped for tinted windows. After entering the
> defendant's vehicle, the passenger was found to have a nominal
> amount of marijuana. The officer testified that his intent was to cite
> only the defendant for the tinted windows, a minor misdemeanor, and
> give a warning to the passenger. The search of the defendant's trunk
> was then done without consent and extensively due to a small amount

4

of marijuana. A firearm was discovered in the trunk. The Court finds that all of the testimony was credible.

{¶11} The trial court additionally indicated that "the issue is the search of the trunk and the fact that it was beyond the scope of the stop." The court referred to three cases. First, a federal case involving what "scope" means in the context of consent to search. *United States v. Elliott*, 107 F.3d 810 (10th Cir.1997). Second, an Ohio Supreme Court decision holding that the scent of burnt marijuana coming from the passenger compartment of a defendant's vehicle did not, standing alone, establish probable cause for a warrantless search of a trunk. *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985. Finally, a recent decision from this court concluding that the scent of burning marijuana, standing alone, did not support a warrantless search of a trunk. *State v. Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, 2020-Ohio-4689.

## II. Analysis

### A. Decision on Motion to Suppress and Appellate Review

{¶12} An appellate court's review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* Where a motion to suppress involves factual issues, the trial court "shall" state its essential findings on the record. Crim.R. 12(F).

{¶13} We must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Burnside* at ¶ 8. "Accepting these facts as true,

5

[we] must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

## B. Scope of Motion to Suppress

{**¶14**} "To suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph one of the syllabus. The notice requirement involves "the specific legal and factual grounds upon which the validity of the search and seizure is challenged." *Id.* at 219.

{**¶15**} Generally, a defendant waives for purposes of appeal grounds for suppression that are not articulated in the motion to suppress and memorandum of support, unless they are articulated later without objection by the state and with permission of the court. *See generally id.* at 221; *State v. Lattimore*, 1st Dist. Hamilton No. C-100675, 2011-Ohio-2863, ¶ 7-9; Moreover, where a defendant concedes an issue in the lower court, the invited-error doctrine precludes revival of the abandoned argument on appeal. *Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, 2020-Ohio-4689, at ¶ 15.

{**¶16**} We mention these procedural rules because on appeal Curry presents legal and factual grounds to support suppression of the firearm, including the lawfulness of the stop, that he did not present in his written motion or memorandum in support. In that motion, Curry sought suppression of the evidence seized from his trunk because the "search of the trunk" was performed under circumstances that did not fall under any of the recognized exceptions for a "warrantless search": "[t]here was no consent given to search the trunk of the vehicle, the contents of the trunk were not in plain view * * *, there were no exigent circumstances that would allow a

search for the safety of the officers to extend to a trunk of the vehicle that is not accessible from inside the vehicle * * * nor was there a crime in progress, that would justify the warrantless search of the trunk of the vehicle," "regardless of any suspicion the officers may have had at the time."

{¶17} Further, at the suppression hearing, the assistant prosecutor objected to defense counsel's attempt to extend the specified legal and factual grounds asserted in Curry's written motion. The trial court sustained the objection. Finally, Curry effectively conceded the lawfulness of the stop, telling the court at the conclusion of the hearing that "since the [window tinting] law has been changed * * * it's basically [the officer's] opinion whether they can see into the vehicle or not." On this record, we conclude Curry waived these new arguments, including the lawfulness of the stop, for purposes of appeal.

{¶18} Accordingly, we limit our discussion to the legal and factual grounds presented in the motion to suppress—whether the search of Curry's vehicle during a lawful detention fit into a recognized exception to the warrant requirement and was thus reasonable under the Fourth Amendment to the United States Constitution and Article 1, Section 14, of the Ohio Constitution.

### C. Automobile Exception

{¶19} Warrantless searches are per se unreasonable without prior approval of a judge or magistrate, subject to a few well-established exceptions. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, 2020-Ohio-4689, at ¶ 13. The state maintains the search was constitutionally reasonable based on the "automobile exception" to the warrant requirement. *See United States v. Ross*, 456

U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000).

{¶20} The "automobile exception" applies to searches of "validly stopped motor vehicles" that are supported by an officer's "probable cause to believe that [the] vehicle contains contraband." *Moore* at 51. Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate. *Ross* at 809; *Moore* at 49. "[T]he scope of the search is limited by the object of the search and the places that may conceal the contraband." *Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, at ¶ 13, citing *Howard*, 1st Dist. Hamilton Nos. C-070174 and C-070175, 2008-Ohio-2706, ¶ 11.

{¶21} Probable cause to search a vehicle may be based on odors. *See Moore* at syllabus ("The smell of marijuana, alone, by a person qualified to recognize the odor is sufficient to establish probable cause to search a motor vehicle pursuant to the automobile exception to the warrant requirement."), quoted in *State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, 116 N.E.3d 1262, ¶ 15. The scope of the search based on that odor is circumscribed, as "[a] trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches." *Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, at ¶ 51. To search a trunk, an officer must observe more than just an odor of burnt marijuana in the passenger compartment. *See Farris* at ¶ 52, cited in *Ulmer* at ¶ 17.

{¶22} Curry agrees that under the case law governing the search of trunks based on the scent of raw marijuana, the objective facts presented through Officer Pitts's testimony, if believed, are sufficient to support a finding that raw marijuana would be found in the trunk. *See State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 58; *Howard,* 1st Dist. Hamilton Nos. C-070174 and C-070175,

2008-Ohio-2706, at ¶ 11. Officer Pitts detected the odor of raw marijuana emanating specifically from the trunk, he smelled marijuana in the passenger compartment but recovered just a small quantity of marijuana, and he had training and experience in identifying the scent of raw marijuana.

{¶23} The parties disagree as to whether the trial court accepted the officer's testimony. The state takes the position that the trial court expressly found the officer credible, but committed error when the court failed to properly distinguish the facts of this case from *Farris* and *Ulmer*. Curry argues the state's argument is based on a faulty premise that trial court accepted Officer Pitts's testimony about detecting the scent of raw marijuana emanating from trunk.

{¶24} In support of his position, Curry notes the lower court found "all the testimony was credible" and two witnesses presented conflicting perspectives. Curry further points out the trial court ultimately ruled that suppression was appropriate after weighing the evidence. Curry contends the trial court simply disbelieved the officer and concluded the officer lacked a lawful basis to extend the scope of the stop without the detection of the scent of marijuana from the trunk.

{¶25} We are not persuaded by Curry's position. The state sought to justify the warrantless search based on the exception for probable-cause-based searches of automobiles. The state relied on objective facts presented through Officer Pitts's testimony, including the key fact concerning the odor of marijuana emanating from the trunk. As previously mentioned, Crim.R. 12(F) requires the court when adjudicating a motion to suppress to "state its essential findings on the record." Here, the trial court granted the motion to suppress but never stated it found the officer's testimony incredible, an "essential finding" for suppression based on the

governing law and facts at issue in this case. Instead, the trial court made an express finding of *credibility*.

{¶26} Relatedly, we are unable say the finding of credibility is not supported by competent and credible evidence. A trained officer's testimony concerning the detection of the odor of marijuana from a closed trunk is not inherently incredible. *See, e.g., Howard*, 1st Dist. Hamilton Nos. C-070174 and C-070175, 2008-Ohio-2706.

{¶27} We are troubled by the absence of marijuana in the trunk, but realize there could have been a lingering scent of marijuana. The trial court was in the best position to judge the officer's credibility. Thus, we defer to the trial court's acceptance of Officer Pitts's testimony, which adequately conveyed his experience and training with the substance.

{¶28} Finally, we conclude Curry's concerns about the conflicting testimony—his versus the officer's—are unwarranted. In our view, the trial court directed the credibility comment to the officer's testimony, but then misapplied the law concerning the automobile exception to the warrant requirement. That exception allows a probable-caused based search of a trunk during the lawful detention of a motorist, even when that probable cause is based primarily on the odor of raw marijuana emanating from the trunk and is unrelated to the basis for the traffic stop.

{¶29} Given the circumstances of this case, we hold the trial court erred by suppressing the firearm recovered from the trunk of Curry's vehicle. Accordingly, we sustain the state's single assignment of error.

### III. Conclusion

{¶30} The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this decision and the law.

Judgment reversed and cause remanded.

MYERS, P.J., concurs.
BERGERON, J., dissents.

BERGERON, J., dissenting.

{¶31} I agree with the majority that, if the officer actually smelled raw marijuana wafting from the trunk, that would provide probable cause to search pursuant to the automobile exception. Our disagreement stems from how we read the trial court's decision. The majority indicates that "the trial court expressly found the officer credible," which provides its rationale for concluding that the trial court committed legal error. Majority opinion at ¶ 2. That, however, is not the case. The trial court, summarizing the testimony, noted only: "The Court finds that all of the testimony was credible." It is significant that the officer and Mr. Curry both testified (painting diametrically opposed pictures of what happened), so the trial judge could not believe both sets of testimony. A more complete examination of what unfolded below convinces me that the trial court did not find the officer's testimony credible, and therefore I respectfully dissent.

{¶32} It is well-established that appellate courts must accept the factual findings of a trial court in evaluating a suppression motion when they are supported by competent, credible evidence. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14 ("Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact * * * [a]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."); *see State ex rel. Portage Lakes Edn. Assn. v. State Emp. Relations Bd.*, 95 Ohio St.3d

533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 39 ("The issue of probable cause in criminal proceedings is essentially one of fact."). And if we harbor doubt as to how to understand the trial court's conclusion, we must interpret it in a manner consistent with the judgment. *See State v. Bennett*, 1st Dist. Hamilton No. C-190181, 2020-Ohio-652, ¶ 12 ("[W]hen evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment."); *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988) ("[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment.").

{¶33} With the benefit of that perspective, I see several reasons why the trial court might not have found the officer's testimony about a smell of raw marijuana in the empty trunk plausible. The officer testified that he smelled raw marijuana emanating from the cab and the trunk of the car before observing anything. He then saw raw marijuana "shakes" on the passenger side, but in such a trivial amount that it could not legally provide a basis for arrest. At some point, the officer claims to have seen marijuana shakes on Mr. Curry's side of the car as well, though again, in such a meager amount that it could not be collected as evidence. On redirect, the officer testified that he also smelled burnt marijuana (albeit not "burning marijuana"). The nasal detection of raw marijuana allegedly sealed in the trunk seems to be a pretty remarkable observation since no marijuana (raw, burnt, or otherwise) turned up. The majority appropriately admits some concern about the smell of nonexistent raw marijuana, but posits that "there could have been a lingering scent of marijuana" in the trunk. Majority opinion at ¶ 27. Of course, the officer never testified to that, and I don't think we should be bolstering testimony on

13

appeal—particularly going out of our way like this to reject the trial court's conclusions.

{¶34} Second, the officer insinuated that Mr. Curry attempted to flee by testifying that another unit "deployed Stop Sticks to stop the car because it continued to roll * * * [i]f any vehicle attempts to flee us, Stop Sticks are deployed so we don't have a high-speed pursuit." When pressed by defense counsel (and reminded that body-camera video captured the incident), the officer acknowledged that stop sticks were not placed directly in front of the car until after the vehicle had stopped and Mr. Curry was handcuffed. The testimony about the stop sticks is punctuated by inconsistencies, yet the officer relied on Mr. Curry's alleged "slow[ness] to stop" as the originating reason to suspect the vehicle contained contraband. Although the officer witnessed no furtive movements from any of the occupants of the vehicle, he claimed that another officer on scene did. Conveniently, that officer did not testify at the hearing and the testifying officer provided no details on the nature of this "movement" that apparently justified removing the occupants from the vehicle and handcuffing them.

{¶35} Third, the officer insisted that no legal standard governed window-tint violations, which stands at odds with existing law. R.C. 4513.241(A) provides that the director of public safety "shall adopt rules governing the use of tinted glass * * * that prevent a person of normal vision looking into the motor vehicle from seeing or identifying persons or objects inside the motor vehicle." And we find those governing rules in the Ohio Administrative Code. Ohio Adm.Code 4501-41-03(A)(2) (tinting on windshield must have a "light transmittance of not less than seventy per cent plus or minus three per cent"); Ohio Adm.Code 4501-41-03(A)(3) (tinting on side windows must have a "light transmittance of not less than fifty per cent plus or

minus three per cent"). In fact, if no standard existed, it would allow any officer to pull over any car based on window tint, thus throwing open a wide door to pretextual stops.

**{¶36}** The trial court thus confronted (a) smells of burnt and raw marijuana without any physical evidence of such; (b) a potential exaggeration about the car seeking to flee (or at least inconsistencies on that score); (c) vagueness on the nature of any movement in the vehicle, and no first-hand account of it; and (d) a stop for a window-tint violation when the officer never actually substantiated the grounds for the stop because he did not believe any legal standard applied. In light of that, it's not difficult to see why the smell testimony might raise concerns. Regardless, our job is to "neither weigh the evidence nor judge the credibility of witnesses." *State v. Woods*, 2018-Ohio-3379, 117 N.E.3d 1017, ¶ 19 (5th Dist.). We defer to the trial court because "the trial court has had the opportunity to observe the witness' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record." *State v. Whitfield*, 1st Dist. Hamilton No. C-190591, 2020-Ohio-2929, ¶ 12. Inferences to be drawn from the evidence present factual questions within the province of the trial court, and "[a] reviewing court can not usurp the function of the triers of fact by substituting its judgment for theirs." *Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 45, 430 N.E.2d 468 (1982); *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E. 2d 1273 (1984) ("A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.").

**{¶37}** To support its opinion, the majority determines that the trial court really meant to find the officer's testimony fully credible. I'm afraid I just can't divine that from the transcript. After all, the trial court explained that the search

resulted "extensively due to a small amount of marijuana"—not from the smell of raw marijuana in the trunk. Given the state's focus on the smell throughout the hearing, that comment alone suggests the trial court, with the benefit of observing the testimony described above, discounted the smell of raw marijuana in the trunk as the basis for probable cause. From that springboard, the trial court proceeded to cite three cases supporting its decision to suppress the evidence. *United States v. Elliot*, 107 F.3d 810 (10th Cir.1997) (granting motion to suppress where officer exceeded scope of consent); *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985 (holding that light odor of burnt marijuana does not establish probable cause for warrantless search of the trunk); *State v. Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, 2020-Ohio-4689 (reversing conviction where the officer did not have probable cause to search the trunk). The citation of these cases further supports the trial court's rejection of the state's theory for probable cause.

{¶38} In *Ulmer*, for instance, officers stopped the defendant in a parking lot on suspicion of trespassing. At the hearing on the motion to suppress, one officer testified that he searched the trunk because he could smell a very strong odor of marijuana coming from Mr. Ulmer, the immediate vicinity, and the vehicle. We disagreed with the state's theory of probable cause, explaining that the odor of burning marijuana could not support the search of the vehicle's trunk (because burning marijuana would be unlikely to be found in the trunk). We specifically contrasted that situation with a scenario in which an officer testified "that he smelled raw marijuana or that he was trained to detect the odor of raw marijuana." *Ulmer* at ¶ 19. This case provides the exact scenario contemplated by *Ulmer*, so if the trial court believed the officer's testimony about the smell of raw marijuana (as the

16

majority concludes), the court would have used that as a fairly obvious reason to distinguish *Ulmer*. But that's not what the trial court did.

{¶39} Similarly, in *Farris*, the smell of burning marijuana could not be wielded to justify a search of the trunk. "The odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. No other factors justifying a search beyond the passenger compartment were present in this case. The officer detected only a light odor of marijuana, and the troopers found no other contraband within the passenger compartment." *Farris* at ¶ 52. Again, if the trial court reached the conclusion that the majority envisions, it would have readily distinguished this result rather than follow it.

{¶40} Admittedly, the trial court could have been clearer in setting forth its credibility findings. But the majority's conclusions simply can't be squared with my reading of the trial court's decision. And the record amply supports trial court's decision to disbelieve the testimony about the odor of raw marijuana in the trunk. I accordingly respectfully dissent and would affirm the trial court's judgment.

Please note:

The court has recorded its own entry this date.