[Cite as *State v. Mobley*, 2018-Ohio-4678.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-205 |
| v. | : | (C.P.C. No. 17CR-1058) |
| Derrick R. Mobley, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 20, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Derrick R. Mobley, appeals a judgment entered by the Franklin County Court of Common Pleas on February 21, 2018 and corrected on February 27, 2018, sentencing him to 13 months of community control following a no contest plea to improperly handling a firearm in a motor vehicle. Mobley contends that the trial court erred in refusing to grant a motion to suppress the firearm found during a warrantless search of his automobile. Because officers witnessed a transaction that appeared to be a hand-to-hand drug transaction, detected a smell of marijuana coming from Mobley's vehicle, and viewed marijuana grinders in plain view within the vehicle, the officers had probable cause to search Mobley's automobile and containers in it, including Mobley's backpack. We overrule Mobley's sole assignment of error and affirm the trial court in all respects.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}    On February 21, 2017, a Franklin County Grand Jury indicted Mobley for one count of improperly handling a firearm in a motor vehicle based on the allegation he had a loaded pistol in his car in a location in which it was accessible without leaving the vehicle. (Feb. 21, 2017 Indictment.)  Mobley pled "not guilty," and on September 15, filed a motion to suppress.  (Mar. 10, 2017 Plea Form; Sept. 15, 2017 Mot. to Suppress.)  The defendant-appellee, State of Ohio, opposed his motion and, on November 16, 2017, the trial court held a hearing on the motion.  (Sept. 21, 2017 Memo. in Opp.; Tr., filed Apr. 17, 2018[1].)

{¶ 3}    At the hearing, two officers testified to essentially the same set of circumstances.  They testified that on December 11, 2016, they were on patrol together West of James Road on Broad Street when they saw a car parked in front of a convenience store with someone leaning in the driver's side window.  (Tr. at 9-10, 38-39.)  Initially, they thought they were observing a hand-to-hand drug transaction.  *Id.*  Based on this observation, they pulled into an empty lot next door, parked their cruiser, and approached the car on foot.  (Tr. at 10-11, 39.)  Officer Kurt Alt approached the man who had been at the window of the car while Officer James LaFollette approached the passenger side of the car to engage with the driver.  (Tr. at 11-12, 39.)  The man who had been at the window of the car told Alt his cousin had just asked him to buy some "shells" (which is a term for a flavored cigar that is then emptied of tobacco and refilled with marijuana).  (Tr. at 39-40.)  The driver of the car, Mobley, rolled down the passenger side window in order to speak to LaFollette.  (Tr. at 12.)  When Mobley rolled down the window, LaFollette caught the scent of marijuana coming from inside the car and could see marijuana grinders in a shallow pocket in the driver's side door.  (Tr. at 13-15.)  LaFollette and Alt both testified the car was already parked when they approached, no commands were issued, no weapons were used or threatened, and the encounter was merely a consensual conversation until the point when LaFollette smelled the marijuana and saw the grinders.  (Tr. at 12-13, 34, 45-46.)

{¶ 4}    LaFollette told Alt what he smelled and saw and asked Alt to remove Mobley from the car.  (Tr. at 15-16, 40.)  Alt opened the door and asked Mobley to step out of the car.  (Tr. at 40.)  When he did, he also saw the grinders.  *Id.*  He then asked Mobley if he

---

[1] All the hearings held in the case were filed in a single consecutively paginated transcript volume on April 17, 2018.

could pat him down for weapons.  (Tr. at 41.)  Mobley consented and Alt patted him down.  *Id.*  During the pat down he felt something that felt like it could be a baggie of marijuana and asked Mobley if that was the marijuana they were smelling.  *Id.*  Mobley confessed it was, and Alt removed the baggie from Mobley's pocket.  *Id.*

{¶ 5}    While Alt was patting down Mobley, LaFollette was searching the car.  (Tr. at 16.)  During the search, he found a black backpack in the back seat of the car and inside the backpack was a loaded firearm.  (Tr. at 16-17.)  After LaFollette found the firearm, Mobley volunteered it was his and registered in his name. (Tr. at 51.)  Alt arrested Mobley and placed him in handcuffs.  (Tr. at 49.)  Neither officer testified that Mobley volunteered the information that a concealed-carry permit holder would have been required to volunteer pursuant to R.C. 2923.16(E), and Alt testified LaFollette asked if Mobley had a permit to carry the firearm and Mobley indicated he did not.  (Tr. at 52.)

{¶ 6}    Approximately two and one-half months after the hearing, on January 31, 2018, the trial court denied Mobley's motion to suppress.  (Jan. 31, 2018 Decision & Entry.)  It reasoned the encounter was consensual up until the point when LaFollette smelled marijuana and saw the marijuana grinders in plain view; at that point. LaFollette developed probable cause to search Mobley and his vehicle for marijuana.  *Id.* at 4.  During that valid search, the gun was found and Mobley voluntarily admitted the weapon was his, and he did not have a valid permit to possess it in the manner in which he possessed it.  *Id.* at 4-5.  Thus, concluded the trial court, Mobley's rights were not violated.  *Id.*

{¶ 7}    Mobley pled no contest to the indicted charge on February 20, 2018.  (Tr. at 89.)  During the same hearing, the trial court proceeded to sentencing and imposed 13 months of community control.   (Tr. at 92.)   The trial court entered judgment on February 21, 2018 and later corrected the entry on February 27, 2018 to accurately reflect that Mobley had pled "no contest" and not "guilty."  *Compare* Feb. 21, 2018 Jgmt. Entry at 1 *with* Feb. 27, 2018 Amended Jgmt. Entry at 1.[2]

{¶ 8}    Mobley now appeals.

---

[2] The Supreme Court of Ohio has held that " 'trial courts lack authority to reconsider their own valid final judgments in criminal cases' * * * although trial courts retain continuing jurisdiction to correct a void sentence and to correct a clerical error in a judgment."  *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, ¶ 20, quoting *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 338 (1997), citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 19; *State ex rel. Hansen v. Reed*, 63 Ohio St.3d 597 (1992).  We interpret this "amended entry" to be a correction of a clerical error and note that it should have been designated "nunc pro tunc" since a criminal judgment cannot be otherwise "amended."

## II. ASSIGNMENT OF ERROR

{¶ 9}   Mobley presents a single assignment of error for review:

> The trial court erred in denying Defendant-Appellant's motion to suppress evidence obtained from a backpack where officers did not have probable cause to believe it would contain the object of the search.

## III.  DISCUSSION

{¶ 10} Generally, in reviewing a decision on a motion to suppress, we afford deference to the trial court's factual determinations and review its recitation of historical facts for "clear error," but we review statements of law and the application of law to facts de novo.  *See, e.g.*, *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and *effects*, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(Emphasis added.)   Effects are defined as "[m]ovable property; goods."  *Black's Law Dictionary* 628 (10th Ed.2014); *see also Oxford English Dictionary* (3d Ed.2008) (see definition 7 for "effects *n.*").  The United States Supreme Court has made clear that, among other things, "effects" include luggage (and we find a backpack to be a type of luggage).  *United States v. Place*, 462 U.S. 696, 705-06 (1983).  Absent an exception, the Fourth Amendment prohibits searching "effects" (such as a backpack) without a warrant.

{¶ 11}  However, when the police have probable cause to search a car for something, they need not secure a warrant and may also search containers within the car (such as a backpack) if those containers could accommodate the quarry of the search.  *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999); *United States v. Ross*, 456 U.S. 798, 799-800 (1982); *Carroll v. United States*, 267 U.S. 132, 149 (1925).  The Supreme Court of Ohio has previously decided that officers have probable cause when they smell the odor of marijuana

coming from a vehicle. *State v. Moore*, 90 Ohio St.3d 47 (2000), syllabus.[3] In Mobley's case, the officers not only smelled marijuana, they observed an interaction that appeared to be a hand-to-hand drug transaction, and they also saw paraphernalia used in preparing marijuana for consumption. *See supra* at ¶ 3. The fact that their initial suspicion (that Mobley was engaged in a hand-to-hand drug transaction) proved to be incorrect does not mean that the suspicion was objectively unreasonable based on what they initially observed. Under the circumstances, they had probable cause to suspect that Mobley was involved in the possession or sale of marijuana and were therefore entitled to search his person, car, and containers within the car that could have accommodated marijuana. This included the backpack.

{¶ 12} On appeal, Mobley does not contest the initial encounter with officers LaFollette and Alt was consensual or that LaFollette and Alt developed probable cause when LaFollette smelled marijuana and observed the marijuana grinders in plain view in the car. Rather, his argument is that after Alt found marijuana on Mobley's person and Mobley told the officers that was the marijuana they were smelling, the search should have ended; the backpack should never have been opened or the gun discovered because nothing in the record suggests the bag itself smelled like marijuana. (Mobley's Brief at 10.) The State responds it was Mobley's responsibility to put the State on notice he was challenging the search of the backpack and it was Mobley's failure to inquire that resulted in the lack of evidence as to how the backpack smelled. (State's Brief at 5.) However, "[w]hen a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974). Mobley's motion was filed before its evidentiary record was developed through the hearing process. He did not articulate in his motion the particular rationale for exclusion he now argues on appeal, but it would be absurd for the State in a single-count felony indictment for carrying a concealed weapon to believe that Mobley would only be seeking suppression of the marijuana evidence and not the gun, the subject of the indictable criminal offense. We cannot

---

[3] While recent laws permit the use of some marijuana products for medicinal purposes (s*ee* 2016 Am.Sub.H.B. No. 523 (online at 2015 Ohio HB 523)), this question has not been raised nor do the facts support it in this appeal. Thus, we continue to rely on *Moore*'s legal precedence.

countenance that the State could with a straight face argue Mobley's motion denied it notice that the gun was the evidence he sought to exclude and that it was found in the backpack, which was searched without a warrant. The burden was on the State to at least explain how the search of the backpack was appropriate when it lacked a warrant to search the backpack.

{¶ 13} Regardless, we find the State's showing of probable cause was sufficient for it to search the backpack. When the police saw what appeared to be a hand-to-hand transaction, then smelled marijuana and saw the grinders, probable cause existed to search Mobley's car and all containers therein that could logically have contained marijuana. *Houghton* at 307; *Moore* at syllabus; *see supra* at ¶ 3. The officers were not required to take Mobley at his word when he told them that the marijuana in his pocket was all he had. *State v. Vega*, ___ Ohio St.3d ___, 2018-Ohio-4002, ¶ 15-16. They were entitled to continue the search to locate additional marijuana in all containers that logically might have contained it, including the backpack.

{¶ 14} Mobley's sole assignment of error is overruled.

## IV.  CONCLUSION

{¶ 15} We find the officers had probable cause to search Mobley's automobile based on their objectively reasonable belief they had observed a hand-to-hand drug transaction, the detection of the smell of marijuana coming from the vehicle, and a plain-view discovery of marijuana paraphernalia. This probable cause justified a warrantless search of the passenger compartment of the car and other objects in the vehicle that could logically have contained marijuana. The officers were not required to accept Mobley's verbal assurance the marijuana they found on his person was the only marijuana in the car, and they were justified in continuing to search containers in the vehicle such as Mobley's backpack. We overrule Mobley's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

_____