[Cite as *State v. Mosley*, 2021-Ohio-3472.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200448<br>TRIAL NO. B-1905403 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| RICO MOSLEY, | | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  October 1, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Haas & Haas Law, LLC*, and *Laurence O. Haas*, for Defendant-Appellee.

**BERGERON, Judge.**

{¶1}   A minor traffic stop yielded drug evidence, which eventually led to a conviction.  But when questioned by the driver, the detaining officer could not even describe the traffic violation that prompted the stop.   After the driver's indictment for drug possession, he moved to suppress the drug evidence, arguing that the police officer lacked probable cause to make the stop.   The trial court agreed, and this appeal followed.  We reverse, holding that the stop was justified because the detaining officer effectuated the stop in reliance on a radio broadcast from another officer who witnessed the driver's traffic offense.

I.

{¶2}   This case involves a purportedly unconstitutional traffic stop and the evidence discovered during that stop.  It arises from an undercover officer's surveillance of a high-drug area of Price Hill in September 2019.  She observed defendant-appellee Rico Mosley's vehicle stopped in the middle of traffic while he spoke with the occupants of an adjacent car. The undercover officer radioed a uniformed officer, Officer Merlin Murrell, asking him to stop Mr. Mosley for impeding traffic, although she also suspected Mr. Mosley's involvement in drug activity.

{¶3}   After committing the traffic offense, Mr. Mosley pulled away, prompting the undercover officer to follow his car until the uniformed officer could arrive.  During this journey, the undercover officer observed Mr. Mosley "making all kinds of movement as if to hide something," facts that she conveyed to Officer Murrell as he was en route.  He eventually caught up and pulled Mr. Mosley over.

{¶4}   During the traffic stop, Officer Murrell could not issue the traffic citation, however, because he did not know any details of Mr. Mosley's traffic violation (i.e., the nature of the offense or where it occurred).  Nevertheless, Officer Murrell asked Mr. Mosley

to step out of his vehicle. Mr. Mosley refused to consent to a search of his vehicle, but admitted that he had marijuana in the vehicle. Officer Murrell contacted a K-9 unit, which arrived within ten minutes. The trained dog alerted onto the vehicle, at which point Officer Murrell discovered a bag of crack cocaine in the center console. Mr. Mosley was subsequently arrested for drug possession.

{¶5} Prior to trial, Mr. Mosley moved to suppress, challenging the constitutionality of the traffic stop. At a hearing, the trial court held that Officer Murrell's stop was unconstitutional because he could not articulate the specific traffic offense that justified the stop or the location where it occurred. The state immediately appealed from that judgment.

II.

{¶6} The state's sole assignment of error asserts that the trial court erred by granting Mr. Mosley's motion to suppress on the grounds that Officer Murrell lacked constitutional justification to make the stop. The state argues that Officer Murrell could effectuate the traffic stop because the undercover officer told him that Mr. Mosley committed a traffic violation.

{¶7} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16. The court "must accept the trial court's findings of fact if they are supported by competent, credible evidence. But [we] must decide the legal questions independently, without deference to the trial court's decision." (Citation omitted.) *Id.*

A.

{¶8} We begin with the accepted rule that "[u]nless an exception applies, warrantless searches are per se unreasonable." *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 8 (1st Dist.). *See State v. Ward*, 2017-Ohio-8141, 98 N.E.3d 1257, ¶ 13 (1st Dist.). But an entire body of caselaw has developed concerning

3

automobile stops. As the Supreme Court explains, where an officer has "probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable * * * even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996).

{¶9} The state maintains that Officer Murrell had probable cause by virtue of the undercover officer's radio broadcast. In this regard, the state points to *State v. Cook*, which held that a stop is constitutionally justified "even where the officer making the stop lacks all of the information justifying the stop. * * * [T]he entire [law enforcement] system is required to possess facts justifying the stop or arrest, even though the arresting officer does not have those facts." *State v. Cook*, 65 Ohio St.3d 516, 521, 605 N.E.2d 70 (1992), citing *State v. Henderson*, 51 Ohio St.3d 54, 554 N.E.2d 104 (1990), and *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The Supreme Court also instructs that "information supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest." *Henderson* at 57.

{¶10} Based on this precedent, particularly *Henderson*, we agree that Officer Murrell had the probable cause required to make this traffic stop. In *Henderson*, an officer witnessed the defendant driving a damaged vehicle on the wrong side of the road, apparently intoxicated. *Id.* That officer communicated these facts to another officer who ultimately stopped the defendant. *Id.* The Supreme Court held that the detaining officer had probable cause to make the traffic stop, reasoning that "[i]f a fellow officer's statements can establish probable cause for issuance of a warrant, they should also establish probable cause for a warrantless arrest. * * * If we were to hold otherwise, a police officer could never legally arrest a fleeing misdemeanant in response to a call for help from a fellow officer who

saw the offense take place. Nothing in the Fourth Amendment or the case law requires us to reach such an undesirable result." *Id.*

{¶11} Mr. Mosley attempts to distinguish *Henderson* from our case by noting that the radio communication here merely conveyed that he committed a traffic offense, bereft of any further detail. But we are not aware of any case (nor has Mr. Mosley pointed us to any) that requires a certain caliber of detail when officers communicate regarding the need to pull over or apprehend a suspect. Although the trial court faulted the undercover officer for failing to provide specific details of the violation, this runs afoul of the principle explained above that we must consider the knowledge of the law enforcement community engaged in the investigation and apprehension as a whole. This rule flows from the recognition that many communications between officers are made in the heat of the moment or under exigent circumstances, with no opportunity to provide a detailed narrative of the officers' observations or a recitation of applicable code sections.

{¶12} In light of the existence of probable cause, the ensuing stop, ordering Mr. Mosley out of the car, and the K-9 investigation that revealed drugs were all permissible. To that point, Mr. Mosley does not challenge those other aspects of the stop and search— rather, he limits his focus to the decision to pull him over. Under *Henderson* and *Cook,* however, this stop passes constitutional muster.

\* \* \*

{¶13} Accordingly, we sustain the state's assignment of error and reverse the trial court's suppression of drug evidence obtained during Mr. Mosley's traffic stop. We remand for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**ZAYAS, P. J.**, and **WINKLER, J.**, concur.

5

Please note:

The court has recorded its entry on the date of the release of this opinion